## 28790. HATEM *v.* THE STATE.

DECIDED JANUARY 22, 1941.

*Venable, Dantone & Fountain,* for plaintiff in error.

*Bond Almand,* solicitor, *John A. Boykin,* solicitor-general, *J. W. LeCraw,* contra.

MacIntyre, J. Ethel Hatem was convicted of keeping and maintaining a lewd house. Her certiorari was overruled and she excepted.

While evidence as to the mere reputation of the house being kept as a lewd house is admissible, yet this will not be sufficient to convict under the Code, § 26-6102, if wholly uncorroborated. *Jones* v. *State,* 2 *Ga. App.* 433 (7) (58 S. E. 559); *Watson* v. *State,* 10 *Ga. App.* 794 (74 S. E. 89). The testimony here that the defendant rented the house; that she lived therein; that the women the officers found in the house on different occasions were

lewd women; that the house had the reputation in the community of being a lewd house, and other corroborating circumstances consisting of acts and conduct of men who frequented the house and the acts of the women therein, tended to show that the house was devoted to the practice of fornication and adultery and authorized the verdict of guilty of maintaining and keeping a lewd house.

The only testimony which related to whether or not the defendant had a husband was that of a city officer, to wit: "I know Charlie down there. I have seen him there about twice. I never have arrested him or preferred charges against him for living with her, or for adultery. They are held out as man and wife." On an occasion other than the two when the defendant's husband was at the house, according to the testimony of one witness the following occurred: "Claude and this girl were behind the curtains. When they were behind the curtains, I don't remember what Ethel [the defendant] said to them. I remember she said: 'The landlady [meaning herself] can't make a living. How can a landlady pay her rent unless she charge for them?' There were two girls there besides Ethel." Another witness testified: "As to what I mean by 'woman of the house,' I heard her [the defendant] make this remark to those two in the back there, 'How do you all expect the landlady [meaning herself] to make a living if you got to stand behind that curtain? Go somewhere and do something.'" In her statement, the defendant said: "Elizabeth Mayfield, . . rents from me, lived there just like I did, and this other girl was there, she was just a-visiting me there, she lives over on Washington Street."

A wife may be guilty of violating this section of the Code prohibiting the keeping and maintaining of a lewd house, although at the time living with her husband in the house alleged to be one of ill fame. *Hudson* v. *Jennings,* 134 *Ga.* 373 (1*d*) (67 S. E. 1037); *Bell* v. *State,* 92 *Ga.* 49 (18 S. E. 186). Nowhere in the defendant's statement did she expressly contend that she was married or had a husband or that he maintained and kept the house. It thus appears that a finding was authorized that the defendant was active in the conduct of the house, and was not merely passive in the matter and took no measures to hinder and prevent the operation of the house by her husband. *Bell* v. *State,* supra. The

evidence authorized the verdict, and the judge did not err in overruling the certiorari.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*